# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**, | |
| **v.** | **Case No. 1:21-cr-550-RCL** |
| **JAMAL GASSAWAY**, | |
| *Defendant*. | |

## <u>MEMORANDUM OPINION</u>

On August 31, 2021, a grand jury charged defendant Jamal Gassaway with one count of Unlawful Possession of a Firearm and Ammunition by a Person Convicted of Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of 18 U.S.C. § 922(g)(1).  ECF No. 1.  At Gassaway's initial appearance, the government orally moved for detention pending trial. 9/8/2021 Min. Entry.  The government's oral motion was supplemented by a memorandum in support of pretrial detention filed on the docket.  ECF No. 3.

A magistrate judge in this district ordered Gassaway released to home confinement. 9/10/2021 Min. Entry.  Immediately after the magistrate judge entered that order, this Court heard argument on the government's appeal of the release order.  *See* 9/10/2021 Min. Entry.  Upon consideration of the government's filing, ECF No. 3, and the arguments and evidence proffered at the hearing, the Court granted the government's motion and ordered Gassaway detained pending trial.

Set out below are the written findings and reasons underlying that order. *See* 18 U.S.C. § 3142(i)(1) (requiring that a detention order "include written findings of fact and a written statement of the reasons for the detention"); *United States v. Nwokoro*, 651 F.3d 108, 109, 112 (D.C. Cir. 2011) (remanding to the district court for a preparation of "findings of fact and a

statement of reasons in support of [defendant's] pretrial detention" when a transcription of the detention hearing failed to "evince[] a clear and legally sufficient basis for the court's determination" (citation omitted)).

## I.   BACKGROUND

### A. Factual Allegations

The government proffers the following factual allegations in support of its motion for detention pending trial.  At approximately 7:04 P.M. on August 21, 2021, inside of a supermarket in Southeast Washington, D.C., Metropolitan Police Department ("MPD") Officer Donald Green observed Gassaway pass by with an unusually large bulge in the front of his waistband.  ECF No. 3 at 3.  Officer Green witnessed a large and distinct "L" shape protruding from the front right side of Gassaway's waistband, which was not consistent with any part of the human anatomy.  *Id.* Officer Green recognized this to be a pistol.  *Id.*  After locking the supermarket door, Officer Green approached Gassaway and asked if there was a pistol in the front of Gassaway's waistband.  *Id.* Gassaway replied, "I don't got nothing."  *Id.*

Gassaway then attempted (unsuccessfully) to escape the supermarket.  *Id.*  He began to kick the door that Officer Green had locked and struggled against Officer Green.  *Id.*  As Gassaway was kicking the door and struggling with the officer, a Glock 19 9mm semi-automatic handgun fell from Gassaway's pants onto the floor.  *Id.* at 3–4.  Officer Green held Gassaway by his waistband until additional MPD officers arrived on the scene, who assisted with placing Gassaway in handcuffs.  *Id.* at 4.  A surveillance camera inside of the store captured this entire interaction. *Id.*

The firearm was recovered by MPD and processed at the Seventh District.  *Id.*  It was loaded with 15 rounds of 9mm ammunition in the magazine and one round in the chamber.  *Id.* Law enforcement determined that the firearm had been stolen on December 26, 2018.  *Id.*

### B.  Procedural History

On August 31, 2021, a grand jury indicted Gassaway with one count of Unlawful Possession of a Firearm and Ammunition by a Person Convicted of Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of 18 U.S.C. § 922(g)(1).  ECF No. 1. Gassaway was arrested on September 8, 2021.  *See* ECF No. 5.  That same day, the government filed a memorandum in support of pretrial detention in which it explained that it intended to orally move for Gassaway's detention pending trial.  ECF No. 3.  Following a continuance in the detention proceedings, a magistrate judge in this district ordered Gassaway released to home confinement.  9/10/2021 Min. Entry.  After the government moved for a stay of that order and appealed, this Court immediately held a hearing on the government's request for Gassaway's detention.  The Court revoked the magistrate judge's release order and ordered Gassaway detained pending trial.  9/10/2021 Min. Entry.

## II.    LEGAL STANDARDS

### A.  Pretrial Detention Under the Bail Reform Act

The Bail Reform Act, 18 U.S.C. § 3141 *et seq.*, authorizes the detention of a defendant in two scenarios.  First, the government may seek a defendant's pretrial detention if the charged offenses fall into any of five enumerated categories, including a "crime of violence" or a felony that involves the possession or use of a firearm or dangerous weapon.  18 U.S.C. § 3142(f)(l).[1] Second, the government may also seek detention—or the court may hold a detention hearing *sua sponte* to determine whether pretrial detention is appropriate—when the case involves "a serious

---

[1]  The Bail Reform Act defines "crime of violence" as (A) "an offense that has as an element of the offense the use, attempted use, or threatened use of physical force against the person or property of another," (B) "any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense," or (C) "any felony under chapter 77, 109A, 110, or 117."  18 U.S.C. § 3156(a)(4).

risk" that the defendant will flee or "will attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror." § 3142(f)(2).

If the Bail Reform Act authorizes pretrial detention, the judicial officer must hold a hearing to determine whether there are any conditions of release that would reasonably assure the appearance of the defendant as required and the safety of any person in the community. *Id.* § 3142(f). At the hearing, both the government and the defendant may offer evidence or proceed by proffer. *United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996) (per curiam). If the judicial officer finds that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community," the judicial officer "shall order" the person detained pending trial. § 3142(e)(l). A finding that no condition or combination of conditions would reasonably assure the safety of any other person and the community must be supported by clear and convincing evidence. § 3142(f). And a finding that no conditions would reasonably assure the defendant's appearance as required must be supported by a preponderance of the evidence. *United States v. Xulam,* 84 F.3d 441, 442 (D.C. Cir. 1996).

Under some circumstances that are not present here, the Bail Reform Act may establish a rebuttable presumption of detention. *See* § 3142(e). But where, as here, the presumption is not implicated, the court instead must consider the following factors to determine whether there are conditions that would reasonably assure the defendant's appearance and the public's safety:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of Section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device
>
> (2) the weight of the evidence against the person
>
> (3) the history and characteristics of the person, including—

> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings
>
> (B) whether, at the time of the current offense of arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, state, or local law; and

> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

§ 3142(g).

The D.C. Circuit has also held that, for pretrial detention based on dangerousness, the government must "prove[ ] by clear and convincing evidence that an arrestee *presents an identified and articulable threat* to an individual or the community." *United States v. Munchel*, 991 F.3d 1273, 1280 (D.C. Cir. 2021) (quoting *United States v. Salerno*, 481 U.S. 739, 751 (1987)). This inquiry is "forward-looking." *United States v. Hale-Cusanelli*, 3 F.4th 449, 456 (D.C. Cir. 2021). Notably, "[a] person [may] be deemed a danger to the community sufficient to justify detention even without posing a threat of committing violence in the future." *Id.*

The applicable standard of review when a district court judge assesses a magistrate judge's detention order under 18 U.S.C. § 3142 is de novo. *See, e.g.*, *United States v. Fairlamb*, No. 21-cr-120 (RCL), 2021 WL 1614821, at *3 n.2 (D.D.C. Apr. 26, 2021); *United States v. Henry*, 280 F. Supp. 3d 125, 128 (D.D.C. 2017).

### III.    DISCUSSION AND FINDINGS

Because the indictment alleges that Gassaway unlawfully possessed a firearm, the government may seek his detention pending trial.  § 3142(f)(1)(E); *see* ECF No. 1.

The government does not argue that Gassaway is a flight risk.[2]  Instead, the government argues only that "the Court should order the defendant's detention during the pendency of this case to protect the community."  ECF No. 3 at 7.  Accordingly, at issue in this case is whether the government has shown, by clear and convincing evidence, that pretrial detention is warranted because no condition or combination of release conditions will reasonably assure the safety of the community.  *See* § 3142(f)(2).  Upon consideration of the four-factor test in the Bail Reform Act, *see id.* § 3142(g), the Court orders Gassaway detained pending trial.

### A.  The Nature And Circumstances Of Gassaway's Offense

The nature and circumstances of Gassaway's charged offense are serious.  The government's factual proffer is that Gassaway illegally possessed, within easy reach and stashed in the front of his waistband, a loaded semi-automatic weapon while in a public grocery store.  ECF No. 3 at 3–4.  This Court agrees with other courts in this district that unlawfully carrying a concealed or loaded firearm in public poses a risk of danger to the public.  *See United States v. Cole*, 459 F. Supp. 3d 116, 120 (D.D.C. 2020) (noting that a loaded firearm "has the great potential to escalate into violence," particularly when defendant's prior convictions indicate a predilection for violence); *United States v. Riggins*, 456 F. Supp. 3d 138, 144 (D.D.C. 2020) ("[T]he possession of a firearm, especially while seemingly on a drug such as PCP, presents a serious danger to the community."); *United States v. Howard*, No. 20-mj-181 (BAH), 2020 WL 5642288, at *3 (D.D.C. Sept. 21, 2020) ("Illegally possessing a concealed firearm in public where other people are congregated, as alleged, poses an inherent risk of danger to the community.").

---

[2] Notably, there does appear to be some evidence of flight risk in this case (such as Gassaway's 12 prior bench warrants).  *See* ECF No. 4 at 3.  But as the government did not argue this basis of detention and the Court finds that Gassaway's detention is warranted because of his dangerousness, the Court need not consider whether Gassaway is a flight risk.

And there are additional aggravating circumstances present here that demonstrate a clear disregard for the law.  The firearm that Gassaway is charged with possessing was stolen.  ECF No. 3 at 4; *cf. Cole*, 459 F. Supp. 3d at 119 ("[P]ossession of a stolen firearm evidences a danger stemming from felons unlawfully possessing firearms—specifically, that they facilitate the dangerous market for illegal weapons." (internal quotation marks omitted)).  Additionally, after trying to escape, Gassaway struggled against a law enforcement officer who was unable to place Gassaway in handcuffs until he had the assistance of other responding MPD officers.  ECF No. 3 at 4; *see United States v. Chrestman*, No. 21-mj-218 (ZMF), 2021 WL 765662, at *9 (D.D.C. Feb. 26, 2021) (Howell, C.J.) (finding that "deliberate efforts to undermine law enforcement" weigh in favor of detention).

The Court finds that the nature and circumstances of Gassaway's offense weigh in favor of detention.

### B.  Weight Of The Evidence Against Gassaway

The weight of the evidence against Gassaway is strong.  The government not only recovered the stolen firearm that Gassaway was possessing, but it has also proffered surveillance video of Gassaway's struggle with Officer Green and of the firearm falling from Gassaway's waistband.

This Court recently recognized that courts in other Circuits have "cautioned that a district court assessing the weight of the evidence must not consider the evidence of defendant's guilt, but rather must consider only the weight of the evidence of the defendant's dangerousness."  *United States v. Taylor*, No. 21-cr-392-2 (RCL), 2021 WL 3552166, at *5 (D.D.C. Aug. 11, 2021) (quoting *United States v. Brown*, No. 20-cr-27-4 (KBJ), 2021 WL 1736870, at *8 n.4 (D.D.C. May 3, 2021)).  But even under this standard, this evidence *is* probative of Gassaway's dangerousness

for the same reasons that the nature and circumstances of the offense are probative of Gassaway's dangerousness.  Accordingly, the Court finds that this factor weighs in favor of detention.

### C.  Gassaway's History and Characteristics

The third factor—the history and characteristics of the defendant—weighs in favor of Gassaway's detention.  In considering Gassaway's history and characteristics, the Court must "take into account the available information concerning" Gassaway's "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings."  § 3142(g)(3)(A).

At the hearing, defense counsel proffered that Gassaway lives at a "verified address," is employed, and has a "daughter on the way."  These familial and community ties do weigh in favor of release.   But they are strongly outweighed by other aspects of Gassaway's history and characteristics.

Start with Gassaway's criminal history.  Gassaway has *four* prior felony convictions for gun-related offenses, including (1) a 2014 Maryland conviction for Robbery with Dangerous Weapon and Use of a Handgun During the Commission of a Crime of Violence, (2) a 2011 D.C. conviction for Unlawful Possession of a Firearm after having a Prior Conviction, (3) a 2008 D.C. conviction for Carrying a Pistol without a License and Possession of a Controlled Substance, and (4) a 2006 D.C. conviction for Carrying a Pistol without a License.  ECF No. 3 at 6; ECF No. 4 at 4–6.  At the hearing, the government proffered that Gassaway's most recent gun-related offense (his Maryland conviction) involved Gassaway and other defendants holding a victim at gunpoint and taking money from a gas station's cash register.  For this offense, Gassaway was sentenced to

six years' imprisonment and three years' probation, which ended in June of 2017.  ECF No. 4 at 4.

Gassaway's defense counsel raised two primary arguments at the hearing to minimize these prior convictions.  Neither is persuasive.  First, the Court is not convinced that these offenses are "far in the past": Gassaway's period of probation for the armed robbery ended in 2017.  *Id.*  Nor is the Court convinced by Gassaway's argument that his convictions for "mere possession" of a firearm, without some further use of force, will not support a finding of future dangerousness.  The Court has already concluded that illegally possessing a loaded firearm in public poses a risk of danger to the community.  *See supra* p. 6.  In any event, both of Gassaway's arguments fail because his history of recidivism—the present case involving a potential *fifth* firearms offense—makes these prior offenses especially probative of Gassaway's future dangerousness.  Gassaway's recidivism "shows significant disregard for the law forbidding him from possessing a firearm and undermines reasonable confidence that any conditions of release could ensure that he would remain law-abiding on pretrial release."  *Howard*, 2020 WL 5642288, at *4.

Indicia of Gassaway's disregard for the law don't end there.  He has three prior convictions resulting from a failure to comply with court orders, including one conviction for Contempt—Condition of Release Violation and two convictions for Bail Reform Act violations.  And the report prepared by Pretrial Services shows twelve prior bench warrants.  ECF No. 4 at 3.[3]

The Court finds that Gassaway's history and characteristics weigh in favor of detention.

---

[3] Defense counsel disputed the number of times that Gassaway has failed to comply with court orders, but the Court need not address this dispute.

**D.  Nature And Seriousness Of The Danger Posed By Gassaway's Release**

Next the Court considers "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." § 3142(g)(4).  While the same considerations that inform analysis of the nature and circumstances of the charged offenses are probative of dangerousness, the Court must also find, by clear and convincing evidence, that the defendant "presents an identified and articulable threat to an individual or the community." *Munchel*, 991 F.3d at 1282 (quoting *Salerno*, 481 U.S. at 751).

The Court has already explained in its discussion of the first and third § 3142(g) factors that Gassaway is alleged to have unlawfully possessed a concealed, loaded firearm in a public place.  That firearm was stolen.  And Gassaway's history of recidivist behavior involving firearms provides clear and convincing evidence that he will not be deterred from engaging in similar conduct again.  *Cf. United States v. Bridges*, 175 F.3d 1062 (D.C. Cir. 1999) (holding that real-world conduct establishing a pattern of behavior provides a strong indicator that an offender will commit other crimes).  Not only has Gassaway repeatedly disregarded a prohibition on his possessing firearms but his history also indicates an unwillingness to comply with court orders.  Why would "strict" conditions and home confinement *now* stop Gassaway from unlawfully possessing loaded firearms when he has repeatedly violated that clear prohibition in the past?  Gassaway provides no persuasive answer—and the Court finds none.  And here, where Gassaway's most recent criminal history includes a violent offense involving the use of a firearm, the Court is even more concerned that Gassaway's inability to comply with the law would pose a danger to the community if he was released.  Accordingly, there is clear and convincing evidence that Gassaway poses an "articulable threat" to the community if released.  *Munchel*, 991 F.3d at 1282.

Gassaway's arguments to the contrary are unpersuasive.  First, Gassaway contends that unlawfully possessing a firearm without some further use of force does not pose an "articulable and identifiable threat" to the community.  But the Court has already rejected that argument and concluded that unlawfully carrying a loaded firearm in public *does pose* a risk of danger to the community, even if that conduct is not accompanied by other "violent" actions.  *See supra* p. 6.

To the extent that Gassaway suggests that the Court must explicitly find that he poses a threat of *future violence*, that argument has no support in precedent from the D.C. Circuit.  The D.C. Circuit has explained that "[a] person [may] be deemed a danger to the community sufficient to justify detention even without posing *a threat of committing violence* in the future."  *Hale-Cusanelli*, 3 F.4th at 456 (emphasis added).  Gassaway's history of recidivism is strong evidence that he will attempt to unlawfully possess a firearm in the future—which *is* an identifiable and articulable threat to the community.  And this threat would persist if he was released.

Gassaway attempts to minimize his past conduct for this analysis; but this argument has no basis in the Bail Reform Act (or even logic).  Past conduct is especially relevant to determining whether a defendant poses a threat in the future.  *See, e.g.*, §3142(g)(3)(A) (instructing courts making detention determinations to consider the defendant's "past conduct," "criminal history," and "record concerning appearance at court proceedings"); *Maryland v. King*, 569 U.S. 435, 453 (2013) ("[A]n arrestee's past conduct is essential to an assessment of the danger he poses to the public[.]"); *Hale-Cusanelli*, 3 F.4th at 456–57; *Fairlamb*, 2021 WL 1614821, at *5.  So too here. Gassaway's prior history is strong evidence of the danger posed by his release.

Finally, the Court rejects Gassaway's contention that home confinement and strict conditions are sufficient to "disable" any potential threat.  *See Munchel*, 991 F.3d at 1282.  It is unclear to the Court how home confinement would "disable" Gassaway from unlawfully

possessing a firearm in the future when he keeps finding ways to obtain stolen firearms despite his felon status. And the Court is not convinced that Gassaway would comply with conditions of release given his prior history of noncompliance.

*     *     *

The Court finds that the nature and character of the charged offense, the weight of the evidence, the defendant's history and characteristics, and the danger the defendant poses to the community all support pretrial detention. For these reasons, the Court finds by clear and convincing evidence that no condition or combination of conditions of release could reasonably assure the safety of other persons and the community. *See* § 3142(e)(1).

### IV.   CONCLUSION

For these reasons, the Court will **GRANT** the government's motion for review and **ORDER** the defendant detained pending trial. An order of detention accompanies this Memorandum Opinion.

Date:   9/14/21

Royce C. Lamberth
United States District Judge