## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | **Crim. No. 21-CR-550 (RCL)** |
| | : | |
| **v.** | : | |
| | : | |
| **JAMAL GASSAWAY,** | : | |
| | : | |
| **Defendant.** | : | |

### GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits its Memorandum in Aid of Sentencing. For the reasons herein, the United States requests that the Court sentence the defendant to a period of 53 months of incarceration; the government further requests that the Court impose a period of 3 years of supervised release. The government is also seeking the forfeiture of the Glock 19 Gen4 9x19 bearing serial number ACMF579 and a Glock 1587-01 9mm 17-round magazine, as well as 16 rounds of 9mm ammunition. The government is not requesting any fines or restitution in this case, other than required court costs. In support of this sentence, the government states the following.

### FACTUAL AND PROCEDURAL BACKGROUND

On September 1, 2021, a federal grand jury for the District of Colombia returned a one-count Indictment charging Jamal Gassaway with Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of 18 USC § 922(g)(1). The Indictment provided notice to the defendant the Government intended to seek forfeiture as a part of the sentence. Rule 32.2(a) of the Fed. Rules of Crim Proc. Specifically, the defendant shall forfeit the Glock 19 9mm semi-automatic handgun and 9mm ammunition seized during the defendant's arrest.

On December 14, 2021, Defendant Gassaway pleaded guilty to the one-count indictment charging him with Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of 18 U.S.C. § 922(g)(1).  The plea was based on the following facts:

1.  On Saturday, August 21, 2021, at approximately 7:04pm, inside of the Stanton Supermarket located at 1449 Howard Road SE, Washington, D.C., Metropolitan Police Department ("MPD") Officer Donald Green, while off-duty working part time at the above location in full police uniform, observed a male later identified as the defendant, walk past Officer Green, with an unusually large bulge in the front of his waistband.

2.  Officer Green immediately recognized Defendant Gassaway to have a large and distinct "L" shape protruding from the front right side of his waistband. The "L" shape bulge was not consistent with any part of the human anatomy and Defendant Gassaway was wearing tight-fitting jean pants and a tight fitted shirt that also that enabled Officer Green to notice the "L" shaped object. Officer Green, having extensive training, knowledge, and experience in recovering firearms, immediately believed that Defendant Gassaway had a pistol on his person.

3.  Officer Green locked the door to the Stanton Supermarket and then walked over to Defendant Gassaway to make contact with him. Officer Green asked Defendant Gassaway if that was a pistol in the front of his waistband, and Defendant Gassaway stated "I don't have anything," and attempted to exit the store. Defendant Gassaway then started kicking the door trying to exit the store.  While Defendant Gassaway was kicking the door and struggling with the officer the firearm fell from Defendant Gassaway's person and onto the floor.

4.  This interaction, to include the firearm falling out of the defendant's pants, was captured on surveillance camera from inside the store.  Officer Green continued to hold Defendant Gassaway by his waistband until additional units arrived on scene. With the assistance of responding Officers, Defendant Gassaway was placed in handcuffs.

5.  The firearm was recovered by Officer Green and taken to MPD's Seventh District.  A WALES/NCIC check was conducted on the firearm, which revealed that it was stolen on December 26, 2018. The handgun was determined to be a Glock 19 9mm semi-automatic, with a serial number of ACMF579. The firearm was loaded with 15 rounds of 9mm caliber ammunition in the magazine and one round in the chamber. The magazine that was recovered was capable of holding 17 rounds of ammunition.

6.       There are no firearm or ammunition manufacturers in the District of Columbia. Therefore, the firearm and ammunition in this case would have traveled in interstate commerce.

7.       A criminal history check of Defendant Gassaway through the National Crime Information Center (NCIC) confirmed that the defendant has a prior felony conviction in the Circuit Court for Prince George's County, Maryland for Robbery with a Dangerous Weapon and Use of a Handgun During a Crime of Violence, case number CT071928B. The defendant was sentenced to six (6) years' incarceration and three (3) years of supervised probation.

8.       The defendant was previously convicted in D.C. Superior Court case 2011 CF2 13148 for Unlawful Possession of a Firearm (Prior Conviction) and was sentenced to 24 months incarceration. The defendant was also previously convicted in D.C. Superior Court case 2007 CF2 17842 of Carrying a Pistol Without a License (Outside Home or Place of Business) where he was sentenced to 22 months incarceration, and 2006 CF2 1585, also for Carrying a Pistol Without a License (Outside Home or Place of Business), where he was sentenced to 22 months incarceration.

9.       Therefore, the defendant was aware at the time of his arrest in this case that he had a prior conviction for crimes punishable by more than one year incarceration.

Pursuant to the plea agreement, the government agreed the defendant would "not be further prosecuted criminally by this Office for the conduct set forth in the Statement of Offense." ECF No. 26 (Plea Agreement), ¶ 3.

## DISCUSSION AND RECOMMENDATION

## I.    Generally Applicable Legal Principles

When determining the appropriate sentence, the district court should consider all of the applicable factors set forth in 18 U.S.C. § 3553(a). See United States v. Gall, 128 S. Ct. 586, 596 (2007). The listed factors in 18 U.S.C. § 3553(a) include the following:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed –
(A) to reflect the seriousness of the offense, to

promote respect for the law, and to provide just
punishment for the offense;
(B) to afford adequate deterrence to criminal
conduct;
(C) to protect the public from further crimes of the
defendant; and
(D) to provide the defendant with needed educational
or vocational training, medical care, or other
correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for –
(A) the applicable category of offense committed by
the applicable category of defendant as set forth in
the guidelines –
(i) issued by the Sentencing Commission ...;
and
(ii) that, . . . are in effect on the date
the defendant is sentenced; ...

(5) any pertinent policy statement –
(A) issued by the Sentencing Commission ... and
(B) that, . . . is in effect on the date the defendant is
sentenced.

(6) the need to avoid unwarranted sentence disparities among
defendants with similar records who have been found guilty of
similar conduct; and

(7) the need to provide restitution to any victims of the offense.

## II.    Defendant's Sentencing Guidelines Calculation

### A.    Total Offense Level

The base offense level for a violation of 18 U.S.C. § 922(g)(1), is governed by U.S.S.G. §

2K2.1.  Section 2K2.1(a)(3) applies because the offense involved a firearm that "had a large

capacity magazine" and the defendant committed "the offense subsequent to sustaining one felony

conviction for a crime of violence" (the Robbery with a Dangerous Weapon conviction in

Maryland, Docket CT071928B).  *See* PSR ¶ 15.  Additionally, because the defendant used or

possessed a firearm that was stolen, an additional 2 levels are added, resulting in a total offense level of 24 points. *See* PSR ¶ 85. Pursuant to the plea agreement, the total offense level is decreased by three points, resulting in a total offense level of 21. *See* Plea Agreement at ¶ 4(A). For purposes of calculating the base offense level, the government contends that the defendant's Robbery with a Dangerous Weapon conviction under, Maryland Criminal Law Code § 3-403, in the Circuit Court for Prince George's County, Maryland (Docket CT071928B) constitutes a "crime of violence." *See* PSR ¶ 32; Ex. 1, Docket CT071928B, at 3.

For purposes of U.S.S.G. § 4B1.2(a), Maryland armed robbery qualifies as a "crime of violence" pursuant to both the elements clause and the enumerated clause. The "elements clause" of § 4B1.2(a)(1) defines a crime of violence as an offense "under federal or state law, punishable by imprisonment for a term exceeding one year that has an element the use, attempted use, or threatened use of physical force against the person of another." See U.S.S.G. § 2K2.1(a)(4)(A), Application Note 1 (explaining "'Crime of violence,' has the meaning given that term in § 4B1.2"). The "enumerated clause" of § 4B1.2(a)(2) defines a crime of violence as an offense punishable by more than a year in prison that "is" one of several specified offenses, including "robbery."

The Maryland Pattern Jury Instructions for Robbery with a Dangerous Weapon require as elements of the offense that the defendant's conduct involve "*both* the use of a weapon (or the display of a written instrument claiming that the person has possession of a dangerous weapon) to produce intimidation *and* the apparent ability to use the weapon." (Emphasis added.) *See* Ex. 2, 2 MD Criminal Jury Instructions and Commentary § 6.61. The underlying statute itself expressly distinguishes the offense from Robbery (MD Code § 3-402), which as discussed below generally retains its common law definition in Maryland, by adding those two elements. See Md. Criminal

Law Code Ann. § 3-403.[1]  The Maryland crime of Robbery with a Dangerous Weapon qualifies

as a crime of violence under both the elements clause and the enumerated clause.

In <u>Stokeling v. United States</u>, 2019 WL 189343, 139 S. Ct. 554 (2019), the Supreme Court

held that the Florida robbery statute—with elements that track the elements of robbery in

Maryland—satisfies the elements clause. The Supreme Court recognized that,

> Florida law defines robbery as "the taking of money or other
> property ... from the person or custody of another, ... when in the
> course of the taking there is the use of force, violence, assault, or
> putting in fear." Fla. Stat. § 812.13(1). The Florida Supreme Court
> has made clear that this statute requires "resistance by the victim
> that is overcome by the physical force of the offender." <u>Robinson v.
> State</u>, 692 So.2d 883, 886 (1997). Mere "snatching of property from
> another" will not suffice.

<u>Stokeling</u>, 2019 WL 189343 at *9.[2]

---

[1] While retaining its "judicially determined meaning," robbery in Maryland now expressly requires proving both the use or threatened use of force and an intent to withhold property under one of several circumstances. <u>See</u> Md. Criminal Law Code Ann. § 3-401. However, as discussed below, this is essentially how Maryland courts have already construed the offense at common law.

[2] In reaching this conclusion, the Court relied on the common law understanding of robbery as "an unlawful taking ... [which] involved 'violence.'" <u>Id.</u> at 550. The Court relied upon a number of illustrative examples of common law robbery: "it was robbery 'to seize another's watch or purse, and use sufficient force to break a chain or guard by which it is attached to his person, or to run against another, or rudely push him about, for the purpose of diverting his attention and robbing him.'" <u>Id.</u> "Similarly, it was robbery to pull a diamond pin out of a woman's hair when doing so tore away hair attached to the pin." <u>Id.</u> In common law robbery, the core concern was whether the defendant applied force—any degree of force—that was sufficient to overcome a victim's resistance, "however slight." <u>Id.</u> at 551. The Court then concluded that Congress adopted the common law meaning of "force" for robbery in the force clause of the Armed Career Criminal Act. <u>Id.</u>; <u>see also id.</u> at 551-52 ("By replacing robbery as an enumerated offense with a clause that has 'force' as its touchstone, Congress made clear that 'force' retained the same common-law definition that undergirded the original definition of robbery adopted a mere two years earlier.").

All pre-2019 decisions finding the force element of a state robbery law insufficient must be reassessed in light of the <u>Stokeling</u> decision, given its holding that a statute presents a sufficient element of physical force if it matches the requirement of force sufficient to overcome a victim's resistance, however slight that resistance.

Similarly, the offense of robbery in Maryland also requires an element of force. As the Fourth Circuit noted in United States v. Bell, 901 F.3d 455 (4th Cir. 2018), "Robbery in Maryland is a common law crime defined as 'the felonious taking and carrying away of the personal property of another from his person *by the use of violence or by putting in fear*.' Williams v. State, 302 Md. 787, 490 A.2d 1277, 1280 (1985)." Id. at 469 (emphasis added).[3] As the Court of Appeals of Maryland detailed further in Spencer v. State, 30 A.3d 891, 895 (2011),

> Robbery in Maryland is governed by a common law standard. Maryland Code (2002, 2011 Supp.), § 3–401(e) of the Criminal Law Article, provides that "'[r]obbery' retains its judicially determined meaning." From its earliest days in Maryland law, fear has been a central component in distinguishing the crime of larceny or theft from robbery. . . . "Larceny from the Person of a Man either puts him in Fear, and then it is called Robbery; or does not put him in Fear, and then it is called barely, Larceny from the Person."

Id. at 895 (citing William Hawkins, Treatise of the Pleas of the Crown). The Court of Appeals in Spencer went on to cite Coles v. State, 821 A.2d 389, 395 (2003), for the proposition that, "'[t]he hallmark of robbery, which distinguishes it from theft, is the presence of force or threat of force, the latter of which also is referred to as intimidation.'" Thus, the distinction between Robbery and Larceny in Maryland provides a clear dividing line between offenses which involve an element of force, and offenses which do not.

---

[3] The Fourth Circuit in Bell discussed the elements of Maryland robbery at length and rejected an argument by the appellant that a robbery could be effected without threatening force against a person (specifically, by directing force solely against property). In doing so, the Fourth Circuit underscored the elements or robbery and pointed to a number of cases addressing those elements. See id. at 472, citing West v. State, 539 A.2d 231, 234 (Md. 1988) (explaining that robbery requires "actual" or "constructive" violence; that actual violence "implies personal violence"; and that constructive violence is that which "intimidat[es] or plac[es] the victim in fear" (citation omitted)); Spencer, 30 A.3d 891, 898 (Md. 2011) ("[W]hen considering whether there has been a threat of force or intimidation," a court must "consider whether an ordinary, reasonable person under the circumstances would have been in fear of bodily harm"); Snowden v. State, 583 A.2d 1056, 1059 (Md. 1991) ("Robbery is a ... larceny from the person accomplished by either an assault (putting in fear) or a battery (violence)").

The Fourth Circuit took up the question of whether a Maryland robbery is a violent felony once again in light of Stokeling, in United States v. Johnson, 945 F.3d 174 (4th Cir. 2019). The Fourth Circuit held that a conviction for robbery by force in Maryland requires proof that the defendant used either force that overcame the victim's resistance or force capable of causing personal injury. Johnson, 945 F.3d at 180. Indeed, the offense of robbery requires more than nominal contact, as evidenced by the Maryland robbery convictions that have been overturned where the only force used was that used to take the property that was sought. Id. at 180 (citing West v. Maryland, 539 A.2d 231, 235 (Md. 1988) and Cooper v. State, 265 A.2d 569, 572 (Md. 1970)). Consequently, after Stokeling, Maryland robbery committed by force that overcomes a victim's resistance constitutes a violent felony. Johnson, 945 F.3d at 181.

As mentioned in Johnson, the Court of Appeals of Maryland in West v. Maryland, 539 A.2d 231 (Md. 1988), discussed at length the distinction between larceny and robbery in Maryland, and explained that:

> "sufficient force must be used to overcome resistance and the mere force that is required to take possession, when there is no resistance, is not enough, i.e., the force must be more than is needed simply to move the property from its original to another position; there must be more force than is required simply to effect the taking and asportation of the property. Thus, it is not robbery to obtain property from the person of another by a mere trick and without force, or to pick another's pocket without using more force than is necessary to lift the property from the pocket; nor is it robbery to suddenly snatch property from another when there is no resistance and no more force, therefore, than is necessary to the mere act of snatching."

West, 539 A.2d at 234 (citing Cooper v. State, 265 A.2d 569 (Md. 1970)). The caselaw makes clear that under Maryland robbery law, a mere snatching does not constitute a robbery; instead, it requires a level of force to overcome a victim's resistance.

The Fourth Circuit recently certified to the Court of Appeals of Maryland the question of

8

whether an individual may "be convicted of robbery by means of threatening force against property or threatening to accuse the victim of having committed sodomy" under Maryland law.  United States v. Dickson, No. 19-4226, 2021 U.S. App. LEXIS 24520 (4th Cir. Aug. 17, 2021).  The order did not address Johnson and stated that, if the answer were affirmative, "then this state offense does not qualify as a crime of violence under USSG § 4B1.2(a)(2)." While that issue remains pending with the Maryland Court of Appeals, the offense at issue in Dickson was common law robbery (MD Code § 3-402), not Robbery with a Dangerous Weapon (MD § 3-403).  See id. at *3-5; Ex. 3, MD Docket CT062414X.

For this defendant's prior Maryland robbery conviction, we have some indication of the level of force that was used by simply viewing the docket for the offense. See Ex. 1.  The defendant was convicted of Robbery with a Dangerous Weapon (MD Code § 3-403) and Use of a Handgun in a Crime of Violence (MD Code § 4-204). See Ex. 1, at 3.  As noted above, in Maryland, Robbery with a Dangerous Weapon (§ 3-403) is a distinct offense from common law robbery (§ 3-402) that also requires proving both the actual or threatened use of a weapon and an apparent ability to use it.  See United States v. Redrick, 841 F.3d 478, 483-84 (D.C. Cir. 2016).

Given the use of a firearm and assaultive conduct inherent in the offense, it seems clear that the defendant's conduct was not a mere "snatching," but involved force "capable of causing personal injury." See United States v. Johnson, 945 F.3d at 180.  Indeed, this Court, and our Circuit, has found that a conviction under Maryland's Robbery with a Dangerous Weapon statute does count as a crime of violence for this exact reason. See Redrick, 841 F.3d at 485  ("Maryland Robbery with a Deadly Weapon is a violent felony under the Act's still-valid force clause"); United States v. Moore, 149 F. Supp. 3d 177, 183 (D.D.C. 2016) (Maryland robbery with dangerous

weapon necessarily entails the threat or use of force and qualifies say a crime of violence under § 4B1.2 of the Guidelines).[4]

Maryland Robbery with a Dangerous Weapon also qualifies as a crime of violence under the enumerated clause of U.S.S.G. § 4B1.2(a)(2) because its elements are more restrictive than those of the "generic" crime of robbery. To determine whether a crime fits one that is enumerated, courts must "compare the elements of the statute forming the basis of the defendant's conviction with the elements of the 'generic' crime—i.e., the offense as commonly understood." Descamps v. United States, 570 U.S. 254, 257 (2013). A crime is an enumerated offense where "its elements are the same as, or narrower than, those of the generic offense." Mathis v. United States, 136 S. Ct. 2243, 2247 (2016). To hold that a crime is outside the scope of a generic offense's definition, a court must find "a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime." Gonzales v. Duenas-Alvarez, 549 U.S. 183, 193 (2007). "[G]eneric robbery is defined as the 'misappropriation of property under circumstances involving [immediate] danger to the person,'" and "the 'immediate danger' element in that definition is categorically satisfied by the taking of property 'from a person or a person's presence by means of force or putting in fear.'" United States v. Gattis, 877 F.3d 150, 156-57 (4th Cir. 2017); see also, e.g., United States v. Lockley, 632 F.3d 1238, 1244 (11th Cir.

---

[4] Judges of this Court have found, when the issue has been litigated, that Maryland robbery is a crime of violence for Guidelines purposes. Judge Hogan held in United States v. Brown, 1:19-cr-124-TFH, on December 11, 2019, that Maryland robbery counts as a "crime of violence" under § 4B1.2(a)(1), and added that he believes it also qualifies under the most recent version of § 4B1.2(a)(2) which includes "robbery" among the enumerated offenses. See Dec. 11, 2019 Sentencing Tr., United States v. Brown, at 6-8. Judge Moss likewise rejected a defendant's contention at sentencing that Maryland robbery was not a crime of violence for Guidelines purposes in United States v. Branison, 1:17-cr-164-RDM. But see United States v. Crews, 2021 U.S. Dist. LEXIS 23450, at *49-54 (D.D.C. Dec. 7, 2021) (J. Sullivan) (holding Maryland conviction for common law robbery did not constitute a "crime of violence" under the elements clause of §4B1.2(a), but that it nevertheless satisfied the Guidelines' residual clause).

2011) (quoting <u>United States v. Walker</u>, 595 F.3d 441, 446 (2d Cir. 2010)) (defining generic robbery as "'the taking of property from another person or from the immediate presence of another person by force or intimidation'"). That is, almost word for word, how Maryland law defines robbery: "the felonious taking and carrying away of the personal property of another, from his person or in his presence, by violence, or by putting him in fear." <u>Coles</u>, 821 A.2d at 394. Thus, the additional elements of proof in Maryland's Robbery with a Dangerous Weapon statute make it a "narrower" offense than generic robbery. <u>See</u> <u>Mathis</u>, 136 S. Ct. at 2247. It is, therefore, even more clearly within the scope of the enumerated clause than Maryland common law robbery.

Accordingly, the defendant's conviction for Robbery with a Dangerous Weapon qualifies as a crime of violence under both the elements clause and enumerated clause under U.S.S.G. § 2K2.1, and his base offense level for the instant offense should be 21.

**B.      Criminal History Category**

The PSR writer calculates the defendant to have a total of 12 criminal history points (placing him in Criminal History Category V). *See* PSR ¶¶ 25-32. The defendant's prior adult convictions include:

| Offense Date | Charge/ Court | Sentence | Guideline | Criminal History Points |
|---|---|---|---|---|
| 01/26/2006 | CPWL<br><br>2006 CF2 001585 | 08/10/2007: 22 months incarceration, 3 years supervised release<br><br>04/08/2013: Supervision revoked, 8 months jail | 4A1.1(a) | **3** |
| 08/15/2006 | BRA<br><br>2006 CMD 017554 | 08/17/2006: 90 days jail, 80 days suspended, 9 months supervised probation under YRA | 4A1.2(e)(2) | **0** |

| | | 11/14/2006: Probation revoked, 90 days jail | | |
|---|---|---|---|---|
| 09/01/2006 | Ct. 1) No Permit Ct. 2) Contempt<br><br><br>2006 CTF 019197 | 03/22/2007: Ct. 1) 60 days jail, suspended, 11 months probation; *concurrent* with<br><br>Ct. 2) 30 days jail, suspended, 11 months probation | 4A1.2(e)(3) | **0** |
| 11/01/2006 | BRA<br><br>2006 CMD 024461 | 08/10/2007: 150 days jail | 4A1.2(e)(3) | **0** |
| 07/31/2007 | Ct. 1) CPWL Ct. 10) CDS Possession<br><br><br>2007 CF2 017842 | 01/17/2008: Ct. 1) 22 months, 3 years supervised; *consecutive* to<br><br>Ct. 10) 90 days' jail<br><br>04/08/2013: Supervision revoked, 8 months jail | 4A1.1(a) | **3** |
| 07/12/2011 | Unlawful Possession of a Firearm<br><br><br>2011 CF2 013148 | 12/09/2011: 24 months incarceration, 3 years supervised release | 4A1.1(a) | **3** |
| 12/06/2013 | Ct. 1) Robbery with Dangerous Weapon<br><br>Ct. 2) Use of Handgun in a Crime of Violence<br><br>CT071928B (Prince George's County, MD) | 05/16/2014: 12 years incarceration, 6 years suspended, 3 years supervised probation *concurrently* for each count | 4A1.1(a) | **3** |
| Total | | | | **12** |

| | (Category V) |
|---|---|
| | |

### C.      Sentencing Guideline Range

With an offense level of 21 and a Criminal History that falls in Category V, the guidelines' range for Defendant Gassaway under the Plea Agreement is 70-87 months of incarceration.  *See* Plea Agreement, ¶ 4(C).[5]  The Court may impose a term of supervised release of not more than three years.  18 U.S.C. § 3583(b)(2); *see* PSR ¶ 88.

## III.   <u>Sentencing Recommendation</u>

As stated above, the government requests that the Court sentence the defendant to 25% below the bottom of the guidelines range as set forth in the plea agreement and sentence the defendant to 53 months of incarceration, to be followed by 3 years of supervised release.

### A.      The Nature of the Offense

The defendant's conduct in this case presented a danger to everyone in and near Stanton Supermarket, which included four small children.  Despite five prior convictions involving the illegal possession or use of firearms, Defendant Gassaway nevertheless armed himself and, in the close quarters of a local market, engaged in frantic, persistent effort to elude Officer Green and evade potential arrest.  He resisted and fought with the officer, feigned confusion at the officer's attempt to stop and question him after he could not find another exit, twice forced his way through a group of children, and finally tried desperately to wedge himself through the market's front exit.

During his struggle with Officer Green, which lasted several minutes, Defendant Gassaway's stolen semi-automatic Glock pistol, loaded with 16 rounds of ammunition, fell to the ground. And it remained there on the floor, accessible to anyone in the store as the defendant

---

[5] The PSR calculates a Total Offense Level of 21 and a Criminal History Category of V, resulting in a range of 70-87 months.  PSR ¶ 83.

continued trying to wrestle free from the officer's grip and escape through the front doors. Ultimately, several additional responding officers, who approached the store from the outside, were needed to handcuff the defendant and remove him from between the doors.

The incident was captured on the market's closed circuit television cameras, an excerpt of which is included with this memorandum. *See* Ex. 4 (August 21, 2021 Video). Still images from the video are included below:























It is fortunate no one was hurt; however, Defendant Gassaway's actions exposed four young children and all civilians present at the store to considerable risk. Rather than stop in response to Officer Green's commands, the defendant instead decided he did not want to risk going to jail. To avoid doing so, he tried to walk, run, squirm, and fight his way out of the store regardless of the risk to those around him, stopping only when he was caught between its front doors and two officers. Someone else in the market sympathetic to the defendant could have picked up the gun after the defendant dropped it and used it against the officer or others. The defendant's brazen efforts to escape while armed could have easily caused grievous injury.

**B.       The History and Characteristics of the Defendant**

While the defendant accepted responsibility for his actions early in this case, his unlawful possession of a firearm is still particularly troubling in light of his criminal history. As detailed above, the defendant comes before this Court in Criminal History Category V. His prior convictions not only include five involving the possession or use of a firearm—most notably,

Robbery with a Dangerous Weapon—but also Bail Reform Act and Contempt violations, as well as parole and probation violations. The defendant's record thus demonstrates a pattern of disregard for public safety, as well as the law and the judicial process. His record also indicates he remains undeterred from illegally carrying firearms and continues to pose a danger to the community.

Moreover, the defendant's criminal history score may underrepresent that danger, as it does not take into account his numerous other contacts with the criminal justice system. *See, e.g.,* PSR ¶¶ 37-40.  While the government does not rest its allocution on acquitted or dismissed conduct, we nevertheless tender this information as unfortunately illustrating that the defendant's conduct is not an aberration. The government notes that affidavits submitted in support of two of the defendant's prior arrests indicate he sought the aid of uninvolved citizens to obstruct law enforcement efforts to detain or gather evidence against him—actions that would be independent of whether he had actually committed any underlying crime.  *See* PSR ¶¶ 38, 40.

Finally, the defendant's history of dangerous conduct arises despite the fact that he had a childhood in which he was provided for and was not abused or neglected.  *See* PSR ¶¶ 50-52. While there is, sadly, no doubt that growing up in Anacostia poses considerably more danger than most other neighborhoods in this city and the nation, it is also true that most residents do not arm themselves with illegal guns, but the defendant has repeatedly chosen to do so.

**C.      The Need for the Sentence Imposed**

The government believes that a sentence of 53 months of incarceration, to be followed by 36 months of supervised release, is the appropriate sentence in this case.  A significant period of incarceration is necessary to protect the community from the defendant, and will serve to send a message to the defendant that he cannot possess firearms in the future or engage in further criminal activity.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY

By:

\_\_\_\_\_/s/_____
Samuel Frey
PA Bar No. 321856
Assistant United States Attorney
Michael Engallena
NJ Bar No. 018782008
Special Assistant Unites States Attorney
District of Columbia
Federal Major Section
555 4th Street, NW, Washington, DC 20530
(202) 252-7124 (Frey)
samuel.frey2@usdoj.gov
(202) 252-6175 (Engallena)
michael.engallena@usdoj.gov